UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

———————————————————

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA and | ) | |
| the STATE OF ALABAMA and | ) | |
| ALABAMA DEPARTMENT OF | ) | |
| ENVIRONMENTAL MANAGEMENT, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 1:19-cv-00626 |
| | ) | |
| NOURYON FUNCTIONAL CHEMICALS | ) | |
| LLC f/k/a AKZO NOBEL FUNCTIONAL | ) | |
| CHEMICALS LLC, | ) | |
| | ) | |
| Defendant. | ) | |

———————————————————

## COMPLAINT

Plaintiff, the United States of America, by authority of the Attorney General of

the United States and through the undersigned attorneys, acting at the request of the

Administrator of the United States Environmental Protection Agency (EPA), and the

State of Alabama and Alabama Department of Environmental Management (ADEM), file

this Complaint as follows:

## NATURE OF THIS ACTION

1.      This is a civil action brought against Nouryon Functional Chemicals LLC

f/k/a Akzo Nobel Functional Chemicals LLC ("Akzo Nobel") pursuant to Section 113(b)

of the Clean Air Act, (CAA or the Act), 42 U.S.C. § 7413(b), and the Alabama State

Implementation Plan (SIP). Plaintiffs seek injunctive relief and civil penalties for

violations of:  (a) the CAA's Prevention of Significant Deterioration (PSD) provisions,

found at Part C of Title I of the Act, 42 U.S.C. § 7475, and the regulations promulgated

thereunder at 40 C.F.R. § 52.21; (b) the CAA's Title V operating permit program, 42

U.S.C. §§ 7661-7661f, and the implementing federal regulations promulgated at 40

C.F.R. Part 70; and (c) the federally enforceable Alabama SIP, pursuant to Section 110 of

the Act, 42 U.S.C. § 7410, which incorporate or implement the above requirements, and

which establish a federally enforceable permitting program for construction and operation

of new and modified sources in Alabama.

2.      As set forth below, Akzo Nobel has violated and continues to violate the

statutory and regulatory requirements identified in Paragraph 1, by constructing or

modifying the sulfuric acid manufacturing plant that it owns and operates in Axis,

Alabama (the Axis facility), without obtaining the proper permits, installing required

control technology, meeting emission limits, or complying with the requirements for

monitoring, record keeping, and reporting as required by the CAA. As a result of its

operation, the sulfuric acid plant emits, *inter alia*, sulfur dioxide ($SO_2$), and sulfuric acid

mist (SAM), into the atmosphere. Sulfur dioxide and sulfuric acid mist are each a

regulated pollutant under the Act.

3.      Akzo Nobel modified, and thereafter operated, the Axis sulfuric acid plant

at issue in this action, without first obtaining appropriate permits authorizing this

construction and/or operation of modifications, and without installing the best available

control technology (BACT) to control $SO_2$ emissions as required by the CAA, the Act's

implementing regulations, and the Alabama SIP. Moreover, Akzo Nobel failed to comply

with the requirements of Title V, *inter alia*, by failing to identify BACT emission

limitations as applicable requirements for the modified sulfuric acid plant, failing to

operate the modified sulfuric acid plants in compliance with such limitations, and failing

2

to submit a compliance plan for all applicable requirements for which the plants were not in compliance.

4.      Akzo Nobel's operation of the Axis sulfuric acid plant following its unlawful modification has resulted in excess amounts of $SO_2$ being released into the atmosphere.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the subject matter of this action pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and pursuant to 28 U.S.C. §§ 1331, 1345, 1355 and 1367.

6.      Venue is proper in this judicial district pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b) and (c), and 1395(a), because the violations alleged in this Complaint have occurred in this judicial district.

## AKZO NOBEL AND THE AXIS FACILITY

7.      Akzo Nobel has its principal place of business in Chicago, Illinois. Akzo Nobel owns and operates the Axis facility located at 13440 Highway 43 North, Axis, Alabama, where it manufactures sulfuric acid from elemental sulfur.

## STATUTORY AND REGULATORY BACKGROUND

8.      The Act is designed to protect and enhance the quality of the nation's air, so as to promote the public health and welfare and the productive capacity of its population.  CAA Section 101(b)(1), 42 U.S.C. § 7401(b)(1).

### National Ambient Air Quality Standards (NAAQS)

9.      Section 109 of the Act, 42 U.S.C. § 7409, requires the Administrator of EPA to promulgate regulations establishing primary and secondary national ambient air

quality standards (NAAQS) for those air pollutants for which air quality criteria have been issued pursuant to Section 108 of the Act, 42 U.S.C. § 7408. The primary NAAQS are to be adequate to protect the public health with an adequate margin of safety, and secondary NAAQS are to be adequate to protect the public welfare from any known or anticipated adverse effects associated with the presence of the air pollutant in the ambient air. Pursuant to Section 109 of the Act, EPA has promulgated primary and secondary NAAQS for $SO_2$ and PM (including $PM_{2.5}$). 40 C.F.R. §§ 50.4, 50.5, 50.7, 50.13, and 50.18.

10.    Under Section 107(d) of the Act, 42 U.S.C. § 7407(d), each state is required to designate those areas within its boundaries where the air quality is better or worse than the NAAQS for each criteria pollutant or where the air quality cannot be classified due to insufficient data. An area that meets the NAAQS for a particular pollutant is termed an "attainment" area. An area that does not meet the NAAQS is termed a "nonattainment" area. An area that cannot be classified due to insufficient data is termed "unclassifiable."

11.    Section 110(a) of the Act, 42 U.S.C. § 7410(a), requires each state to submit a State Implementation Plan that provides for the attainment and maintenance of the NAAQS for approval by EPA. EPA has approved the Alabama SIP.

**Prevention of Significant Deterioration (PSD) Requirements**

12.    Part C of Title I of the Act, 42 U.S.C. §§ 7470-7492, sets forth requirements for the prevention of significant deterioration of air quality in those areas designated as attaining the NAAQS standards or as unclassifiable with respect to the NAAQS. These requirements are designed to protect public health and welfare, to assure

4

that economic growth will occur in a manner consistent with the preservation of existing clean air resources and to assure that any decision to permit increased air pollution is made only after careful evaluation of all the consequences of such a decision and after public participation in the decision making process. The PSD program, along with requirements that apply in areas designated as nonattainment with respect to the NAAQS, are elements of what is collectively referred to as the "New Source Review" (NSR) program.

13.     Section 161 of the Act, 42 U.S.C. § 7471, requires that each applicable SIP contains a PSD program. A state may comply with Sections 110(a) and 161 by being delegated by EPA with the authority to enforce the federal PSD regulations set forth at 40 C.F.R. § 52.21, or by having its own PSD regulations, approved by EPA as part of the state's SIP, on the basis that the state's PSD provisions set forth in the SIP are at least as stringent as those set forth in the federal PSD regulations. If a state or regional air authority does not have a PSD program that has been approved by EPA and incorporated into that state's SIP, the federal PSD regulations set forth at 40 C.F.R. § 52.21 must be incorporated by reference into the SIP.  40 C.F.R. § 52.21(a).

14.     EPA approved the State of Alabama PSD program into the federally-enforceable Alabama SIP effective November 10, 1981 (46 Fed. Reg. 55517 and has approved several revisions since that time. *See* 50 Fed. Reg. 34804 (effective October 28, 1985; 64 Fed. Reg. 59633 (effective January 3, 2000); and 73 Fed. Reg. 23957 (May 1, 2008) through 82 Fed. Reg.40072 (Effective date October 23, 2017) (most recent approval).

15.     Section 165(a) of the Act, 42 U.S.C. § 7475(a), among other things,

prohibits the construction and operation of a "major emitting facility" in an area designated as in "attainment" or as "unclassified" unless a permit has been issued that comports with the requirements of CAA Section 165 and the facility employs BACT for each pollutant subject to regulation under the Act that is emitted from the facility. Section 169(1) of the Act, 42 U.S.C. § 7479(1), designates any sulfuric acid plant which emits or has the potential to emit one hundred tons per year or more of any pollutant to be a "major emitting facility."

16.     Section 169(2)(C) of the Act, 42 U.S.C. § 7479(2)(C), defines "construction" as including "modification" (as defined in CAA Section 111(a), 42 U.S.C. § 7411(a)). "Modification" is defined in CAA Section 111(a)(4), 42 U.S.C. § 7411(a)(4), to be "any physical change in, or change in the method of operation of, a stationary source which increases the amount of any air pollutant emitted by such source or which results in the emission of any air pollutant not previously emitted." A "major modification" under the federal PSD regulations is "any physical change in or change in the method of operation of a major stationary source" that would result in a significant emissions increase of a regulated pollutant and a significant net emissions increase of that pollutant from a major stationary source, *see* 40 C.F.R. § 52.21(b)(2)(i), and the Alabama SIP defines "major modification" in a substantively identical way. A "significant net emissions increase" under the federal PSD regulations (as well as the Alabama SIP) is 40 tons per year (tpy) or more for $SO_2$, and 7 tpy sulfuric acid mist.  40 C.F.R. § 52.21(b)(23)(i).

17.     If a major modification triggers the requirements of the PSD program, the federal PSD regulations (as well as the Alabama SIP) require the owner or operator of a

major stationary source that has undergone a major modification to apply for a permit incorporating emissions limitations meeting BACT for each pollutant as to which a significant emissions increase occurred as a result of the modification. 40 C.F.R. § 52.21(j).

**Title V**

18.     Title V of the Act, 42 U.S.C. §§ 7661-7661f, establishes an operating permit program for certain sources, including "major sources" as defined in 42 U.S.C. § 7661(2). The purpose of Title V is to ensure that all "applicable requirements" that a source is subject to under the CAA, including PSD, SIP and NSPS requirements, are collected in one permit. Following earlier interim approval, EPA granted final approval to the Alabama Title V program, effective December 15, 1995, *see 60* Fed. Reg. 57346, November 15, 1995.

19.     Section 502(a) of the Act, 42 U.S.C. § 7661a(a), and the Alabama Title V program has at all relevant times made it unlawful for any person to operate a major source except in compliance with a permit issued by a permitting authority under Title V.

20.     Section 503(b) – (d) of the Act, 42 U.S.C. § 7661b(b) – (d), the Title V regulations at 40 C.F.R. §§ 70.5(a), (c), and (d), and the Alabama Title V program, have at all relevant times required the owner or operator of a source to submit an application for a Title V permit that is timely and complete and which, among other things, identifies all applicable requirements (including any requirement to meet BACT pursuant to PSD), certifies compliance with all applicable requirements, and contains a compliance plan for all applicable requirements for which the source is not in compliance.

21.     Section 504(a) of the Act, 42 U.S.C. § 7661c(a), implementing regulations of the Act, 40 C.F.R. § 70.6, and the Alabama Title V permit program regulations have at all relevant times required that each Title V permit include, among other things, enforceable emission limitations and such other conditions as are necessary to assure compliance with applicable requirements of the Clean Air Act and the requirements of the Alabama SIP, including the applicable PSD requirement to comply with an emission rate that meets BACT.

**Enforcement Provisions**

22.     Sections 113(a)(1) and (3) of the Act, 42 U.S.C. § 7413(a)(1) and (3), provide that the Administrator may bring a civil action in accordance with Section 113(b) of the Clean Air Act whenever, on the basis of any information available to the Administrator, the Administrator finds that any person has violated or is in violation of, *inter alia*:  (1) the PSD requirements of Section 165(a) of the CAA, 42 U.S.C. § 7475(a), or any rule promulgated thereunder; (2) Title V of the CAA, 42 U.S.C. §§ 7661-7661f, or any rule or permit issued thereunder; or (3) a SIP or any permit issued thereunder.

23.     Section 113(b) of the Act, 42 U.S.C. § 7413 (b), authorizes EPA to initiate a civil judicial enforcement action for a permanent or temporary injunction, and/or for a civil penalty of up to $25,000 per day for each violation and, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2471, as amended by 31 U.S.C. § 3701, and as provided in 40 C.F.R. § 19.4, the civil penalty that may be sought has increased to up to $27,500 per day for each violation occurring on and after January 31, 1997; up to $32,500 per day for each violation occurring on or after March 15, 2004; and, up to $37,500 per day for each violation occurring on or after January 12, 2009.

## NOTICES

24.      EPA issued a Notice of Violation to Akzo Nobel on January 26, 2016 for undertaking major modifications, without applying for or obtaining a PSD permit and a BACT limit for $SO_2$, at the Axis facility.

25.      Notice of the commencement of this action has been given to the Alabama Department of Environmental Management in accordance with CAA Section 113(b), 42 U.S.C. § 7413(b). EPA has provided notice to Akzo Nobel and to the State of Alabama, its finding of the violations alleged in this Complaint, and the 30-day period established in 42 U.S.C. § 7413(b)(1) between the provision of such notice and the filing of this action has elapsed.

## GENERAL ALLEGATIONS

26.      At all times relevant to this Complaint, the Axis facility has been a "major emitting facility" and "major stationary source," within the meaning of the Clean Air Act.

27.      At all times relevant to this Complaint, the sulfuric acid plant located at the Axis facility has been located in an area designated as attainment or unclassifiable for $SO_2$ and $PM_{2.5}$.

## FIRST CLAIM FOR RELIEF
### (PSD Violations)

28.      Paragraphs 1 through 27 are realleged and incorporated by reference.

29.      Akzo Nobel commenced construction of one or more major modifications, as defined in the Clean Air Act, of the sulfuric acid plant located at its Axis facility.

30.      At the Axis sulfuric acid plant the major modifications Akzo Nobel made included one or more physical changes, including, but not necessarily limited to, the replacement of the plant's external superheater, performed in November, 2000. This

modification resulted in significant emissions increases and significant net emissions increases, as defined by the relevant PSD regulations, of $SO_2$. This modification violated the PSD provisions of the Alabama SIP, enforceable by EPA under Section 113 of the Act, 42 U.S.C. § 7413, and 40 C.F.R. § 52.23.

31.     Unless restrained by this Court, these violations will continue.

32.     As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), this violation subject Akzo Nobel to injunctive relief and civil penalties.

## SECOND CLAIM FOR RELIEF
### (Title V Violations)

33.     Paragraphs 1 through 32 are realleged and incorporated by reference.

34.     As set forth above, Akzo Nobel modified the sulfuric acid plant at the Axis facility in a manner that required compliance with the applicable PSD and SIP regulations. This modification triggered the requirements to, *inter alia,* undergo a BACT determination, obtain a PSD permit establishing emissions limitations that meet BACT requirements pursuant to such a determination, and operate in compliance with such limitations. Akzo Nobel failed to satisfy these requirements.

35.     Akzo Nobel failed to submit a complete application for a Title V operating permit for the Axis facility that would have identified all applicable requirements, accurately certified compliance with such requirements, and contained a compliance plan for all applicable requirements for which the source was not in compliance (including the requirement to meet BACT pursuant to a determination under PSD). Akzo Nobel failed to obtain a proper or adequate Title V operating permit for its Axis sulfuric acid plant that contained emission limitations for $SO_2$  (or SAM) that met BACT. Akzo Nobel thereafter operated its Axis sulfuric acid plant without meeting such limitations and without having

10

a valid operating permit that required compliance with such limitations or that contained

a compliance plan for all applicable requirements for which the source was not in

compliance, in violation of Sections 502(a), 503(c), and 504(a) of the Act, 42 U.S.C. §§

7661a(a), 7661b(c), and 7661c(a), and the state Title V operating permit program

requirements.

36.    Unless restrained by this Court, these violations will continue.

37.    As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), these

violations subject Akzo Nobel to injunctive relief and civil penalties.

## PRAYER FOR RELIEF

WHEREFORE, based on the allegations set forth above, the United States

requests that this Court:

1.    Permanently enjoin Akzo Nobel from operating the sulfuric acid plant at

the Axis facility except in accordance with the Act and the Alabama SIP;

2.    Order Akzo Nobel to remedy the violations by, among other things,

requiring Akzo Nobel to install and operate BACT on the Axis sulfuric acid plant for the

control of $SO_2$ emissions, and for the control of SAM;

3.    Order Akzo Nobel to apply for and comply with permits for the Axis

sulfuric acid plant that are in conformity with the requirements of the PSD provisions of

the Act and the Alabama SIP, as well as the requirements of Title V;

4.     Assess civil penalties against Akzo Nobel for up to the amount provided

by applicable law; and

5.    Grant such other relief as the Court deems just and proper.

Respectfully submitted,


FOR THE UNITED STATES OF AMERICA:


/s/ Jeffrey Bossert Clark_____
JEFFREY BOSSERT CLARK
Assistant Attorney General
Environment and Natural Resources Division



/s/ James W. Beers, Jr. _____
JAMES W. BEERS, JR.
Senior Counsel
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Tel:  (202) 305-0455
Fax:  (202) 514-0097
James.beers@usdoj.gov



RICHARD W. MOORE
United States Attorney
Southern District of Alabama
63 South Royal Street, Suite 600
Mobile, AL 36602
(251) 441-5845


OF COUNSEL:

Marlene Tucker
Associate Regional Counsel
U.S. Environmental Protection Agency
Region 4
61 Forsyth Street
Atlanta, Georgia

FOR THE STATE OF ALABAMA AND THE
ALABAMA DEPARTMENT OF
ENVIRONMENTAL MANAGEMENT:


STEVE MARSHALL, ATTORNEY GENERAL



By: /s/ Steven Shawn Sibley_____
STEVEN SHAWN SIBLEY
Assistant Attorney General and
Associate General Counsel
Alabama Department of Environmental
Management
Post Office Box 301463
Montgomery, Alabama 36130-1463
(334)260-4544 Phone/Fax
ssibley@adem.alabama.gov